IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GMES, LLC,<br>a Missouri limited liability company,<br><br>                Plaintiff,<br>   vs.<br><br>LINE OF SIGHT COMMUNICATIONS, INC.<br>d/b/a/ EXTREME VERTICAL &<br>INDUSTRIAL LIMITS and www.evilgear.com,<br>a California corporation<br><br>SERVE:    c/o Registered Agent,<br>               Steven M. Wilcox<br>               7001 Chesline Drive<br>               Fair Oaks, CA 95628<br>AND<br><br>STEVEN M. WILCOX, individually<br><br>SERVE at:   7001 Chesline Drive<br>                Fair Oaks, CA 95628,<br><br>                Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff GMES, LLC, for its complaint against Defendants Line Of Sight Communications, Inc. d/b/a/ Extreme Vertical & Industrial Limits and www.evilgear.com, and Steven M. Wilcox, individually, (collectively, "Defendants"), alleges as follows:

1.      Plaintiff, GMES, LLC ("GMES" or "Plaintiff") has applied on an expedited basis for a U.S. copyright registration protecting the visual arts work "Website Content of www.gmesupply.com," U.S. Copyright Application Number 1-3183672651. GMES brings this action for infringement of its copyright material, infringement of its trade dress and unfair competition arising under the Lanham Act, Title 15 of the United States Code, and at common

94261342

law against Defendants by virtue of Defendants' copying and infringing use of GMES' copyrighted and trade dress material on Defendants' website, www.evilgear.com.

## PARTIES

2. GMES is a Missouri limited liability company with its principal place of business in Columbia, Missouri.

3. GMES offers for sale and sells industrial supplies, personal protective equipment, fall protection safety equipment, and lifting and rigging equipment.

4. Defendant Line Of Sight Communications, Inc. d/b/a/ Extreme Vertical & Industrial Limits and www.evilgear.com ("EVIL" or "Defendant"), is a California corporation with its principal place of business at 4227 Sunrise Boulevard, Fair Oaks, California 95628.

5. Defendant Steve Wilcox ("Wilcox") is an individual with an address of 7001 Chesline Drive, Fair Oaks, California 95628. Upon information and belief, Wilcox is the President and owner of EVIL.

6. EVIL is a direct competitor of GMES. It also sells industrial supplies, personal protective equipment, fall protection safety equipment, and lifting and rigging equipment. EVIL and GMES have attended and participated in the same trade shows promoting their respective businesses, including The National Association of Tower Erectors ("NATE") 2016 show, held February 22 - 25, 2016 in New Orleans, Louisiana.

7. GMES has attended the NATE conference for at least five years, and is recognized as an industry leader. Upon information and belief, EVIL attended the NATE conference for the first time in 2016.

8. The industrial climbing and rigging industry is a niche business. Only approximately 1,500 individuals from roughly 120 companies attended the 2016 NATE Conference, which is the leading U.S. trade show for the industry.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, and 1338(a).

10. The Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. The Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4 and RSMo § 506.500 because Defendants have done and are doing business in this district and Defendants have committed tortious acts within the State of Missouri and this district.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this district, and 28 U.S.C. § 1400, as this civil action arises under an Act of Congress relating to copyrights and Defendants may be found in this district.

13. Upon information and belief, Defendants sell product in this district and Defendants advertise their product in this district.

14. Upon information and belief, Missouri residents have accessed Defendants' website and have viewed the infringing material.

## FACTS COMMON TO ALL COUNTS

15. GMES created, authored, designed, coded, produced, and maintains a website to sell its products and services over the Internet, accessed via the domain name www.gmesupply.com (herein after, "the GMES Website."). GMES owns the exclusive right, title, and interest in literary, content, and copyright rights in and to the GMES Website.

16. GMES has applied on an expedited basis for copyright registration for such works with the United States Copyright Office, Application Number 1-3183672651. The protected

content of the GMES Website shall herein be referred to as "the Copyright." A copy of the Application for Registration of the Copyright is attached hereto as **Exhibit A**.

17. The Copyright protects the photographs, artwork, videos, blog, design, layout and other protectable copyright content and works of GMES' Website.

18. The GMES Website was launched in 2005.

19. GMES invested substantial time, expense and resources in the creation, development and authorship of the GMES Website.

20. GMES developed all content for the GMES Website.

21. GMES' employees created all product videos featured on the Website.

22. GMES' employees photographed all photos that are featured on the GMES Website.

23. GMES' employees drafted all blog entries featured on the GMES Website.

24. In 2014-2015, GMES spent more than one year redeveloping the GMES Website to improve its functionality. During this time, GMES spent more than $100,000 on website development and its employees devoted more than 350 hours to improving the GMES Website.

25. Since launching the GMES Website, GMES has significantly promoted its website at trade shows, on social media, in its stores, on its blog and in catalogs, brochures, emails, newsletters and on its employee business cards.

26. GMES also promotes its website in industry trade publications. It took out a full-page ad on the inside back cover of *Above Ground Level* magazine to promote its website. The ad featured the website design and listed its features, including product videos, search attributes and filtering capabilities.

27. GMES spends millions of dollars a year advertising its products. GMES' trade show displays, catalogs, brochures, emails, newsletters and business cards utilize GMES' red,

black, white and gray color scheme. All advertisements also incorporate GMES' "Climb Higher" trademark featuring the "grunge" font.

28. Since at least 2005, the GMES Website has consistently utilized a black background and white, gray and/or red text.

29. GMES is the only company in the industrial climbing industry that utilizes this color scheme.

30. A substantial amount of GMES' business is from web sales.

31. On information and belief, Defendant Line of Sight owns and operates a website accessible via the domain name www.evilgear.com ("the EVIL Website").

32. On information and belief, the redesigned EVIL Website was launched in January 2016.

33. The EVIL website contains a number of features that are substantially similar, if not identical to GMES' Website.

34. Defendants willfully misappropriated the advertising, trade dress, and copyrights associated with the GMES Website.

35. In essentially copying the GMES website, Defendants duplicated and exploited the fruits of GMES' extensive labor, research and development.

36. GMES' website includes a black banner at the top of the landing page; as does the EVIL Website. (*See* **Exhibit B**).

37. The GMES Website background is a gray print that resembles stone; the EVIL Website uses a gray background that is substantially the same. (*See* **Exhibit C**).

38. The GMES' Website includes its logo in the top left corner of the landing page. The EVIL Website includes its logo in the top left corner of the landing page. (*See* **Exhibit D**).

39. GMES' logo features gray text on a black background with red accents. Defendants' logo also features gray text on a black background with red accents. (*Id.*).

40. Immediately to the right of GMES' logo, the GMES Website includes a invitation to speak to an expert (in white text) with GMES' customer service phone number in red text. Immediately to the right of their logo, the Evil Website also includes an invitation to speak to a professional (in white text) with a phone number to call in red text. (*Id.*)

41. On GMES' Website, immediately beneath the invitation to call GMES' is a search bar (in white) asking customers "What are you looking for?" On the Evil Website, immediately beneath the invitation to call Defendants is a search bar (in white) asking customers "What are you looking for?" (*Id.*)

42. GMES' Website includes the same color scheme, red, black, white and gray, throughout each of its pages. The EVIL Website includes the same color scheme, red, black, white and gray, throughout each of its pages. (*Id.*)

43. The look of the "Shop by Category" drop down menu is identical on each website. This feature on each website is located on the left side of the page, is in a red box, and has white letters. Further, the "Shop by Category" feature on each website includes a list of main categories, then sub categories with a promo area to the right of the sub categories. (*See* **Exhibit E**).

44. The Evil Website font utilized on its product page is substantially similar to the font utilized on GMES' product page. (*See* **Exhibit F**).

45. GMES' Website landing page includes a photo gallery of centered photographs that continuously scroll. The EVIL Website also includes a photo gallery of centered photographs that continuously scroll. (*See* **Exhibit D**).

46. When a user hovers over a button on the GMES Website the font changes from white to red. The buttons on the Evil Website behave similarly; they also change colors as a user hovers over them. (*See* **Exhibit G**).

47. GMES has trademarked "Climb Higher." The phrase is featured predominantly throughout GMES advertisements and is featured on the GMES Website. (*See* **Exhibit D**).

48. The Climb Higher phrase on the GMES Website is always written in the same gray font, known as "grunge." (*See* **Exhibit H**).

49. The EVIL logo is written in a font that is substantially similar to "grunge." (*See* **Exhibit H**).

50. In blatant disregard for Plaintiff's intellectual property rights, Defendants lifted substantially all of GMES' information from the GMES Website.

51. The EVIL Website was redesigned in January 2016. Prior to its redesign, the EVIL Website looked completely different. (*See* **Exhibit I**).

52. The prior EVIL Website did not include a black banner at the top. It did not include the same layout as the GMES Website, nor did it feature the scrolling photos on the landing page. (*See* **Exhibit I**).

53. The prior EVIL Website did not incorporate the black background, with red, white, and gray accents throughout. Its colors were black, pink and yellow and its layout did not resemble the GMES website. (*See* **Exhibit I**).

54. The prior EVIL Website did not feature the gray stone background. (*See* **Exhibit I**).

55. Thus, it is obvious Defendants copied the overall look, formatting and color scheme of the GMES Website.

7

## COUNT I - COPYRIGHT INFRINGEMENT

56. GMES incorporates and realleges the allegations of paragraphs 1 through 55 as if fully set forth herein.

57. GMES created the Copyright, as such, those works are authored by GMES.

58. All works created by any person or entity working for or on behalf of GMES constitute works made for hire belonging to GMES under the Copyright Act, 17 U.S.C. §§ 101 and 201(b).

59. GMES, as owner of all rights and interest in and to the Copyright, enjoys exclusive rights to use, reproduce, distribute, publicly display, publish, and prepare derivative works of the same under the Copyright Act, 17 U.S.C. § 106.

60. Upon information and belief, Defendants have access to GMES Copyright, and there are probative, substantial, and striking similarities between Defendants' works (including but not limited to the Evil Website) and GMES' Copyright.

61. Defendants through their unauthorized actions, have reproduced and copied the Copyright, infringing upon GMES' copyrights therein.

62. Those elements of the Copyright copied by Defendants constitute protected expression and are of such importance to the copied work that the appropriation is actionable.

63. Any changes or modifications Defendants have made to the Copyright are unlawful derivative works, as they constitute works that are based upon or incorporate the Copyright under 17 U.S.C. § 101.

64. Defendants have publically distributed and displayed the Copyright, as described herein, in violation of GMES' exclusive copyrights in those works and 17 U.S.C. § 106.

65. Because Defendants each knew, or should have known, that he or it was not the author or owner of the Copyright, and knew, or should have known, that GMES owned the same,

Defendants each are liable for direct copyright infringement because each had access to the Copyright, and there are probative, substantial, and striking similarities between the EVIL Website and GMES' Copyright.

66. GMES has not granted permission, whether express, implied or otherwise, for any Defendant to reproduce distribute, display, publish, or prepare derivatives of the Copyright.

67. As a result of the activities described herein, GMES has been damaged.

68. Defendants have infringed GMES' copyright rights and as a result Defendants are jointly and severally liable to GMES for GMES' actual damages and any additional profits of the Defendants or statutory damages, in accordance with 17 U.S.C. § 504 and for GMES' costs and attorney fees pursuant to 17 U.S.C. § 505.

### COUNT II - INFRINGEMENT OF TRADE DRESS UNDER LANHAM ACT, 15 U.S.C. § 1051

69. GMES incorporates and realleges the allegations of paragraphs 1 through 68 as if fully set forth herein.

70. The design and trade dress of the GMES Website includes the black background, and use of white, gray, and/or red text throughout.

71. The design and trade dress of the GMES Website includes the gray stone-like background.

72. The design and trade dress of the GMES Website includes the layout of the website, including the placement of the logo, the placement of the search box and the look and feel of the drop-down menus.

73. The design and trade dress of the GMES Website includes the fonts used on the website.

74. The design and trade dress of the GMES Website includes the format of the photos on the landing page, including the use of a scrolling photo gallery of horizontally-formatted photos.

75. GMES incorporates the black, white, red and gray scheme associated with its website in its print advertising materials.

76. GMES incorporates the black, white, red, and gray scheme associated with its website in its physical trade show displays.

77. As a result of this sales and advertising by GMES, the trade dress of the GMES Website now has a secondary and distinctive trade dress meaning to potential purchasers, in that potential purchasers have come to associate this color scheme on a website selling climbing gear with GMES.

78. Defendants intentionally developed their website to be confusingly similar to Plaintiff's trade dress such that it misleads customers to believe that the products sold on the EVIL Website are sponsored, endorsed, or sold by GMES.

79. This is evidenced by the fact that GMES and Defendants operate in the same niche industry and sell the same products.

80. The confusingly similar aspects of the two websites include, without limitation, the overall look of the Defendants' website, which is presented in a style and manner so as to be confusingly similar to the GMES Website, including, without limitation, the color scheme used, fonts, the layout of the website, and the photo features used.

81. The design and trade dress of GMES' website is arbitrary and nonfunctional. The colors, website design layout, graphics and logos that form GMES' trade dress are not essential to the use of the website; nor do these features effect the cost or quality of products sold by GMES.

10

82. The design and trade dress of GMES' website has become identified in the climbing gear market as originating with GMES.

83. GMES has exclusively and continuously used the design of their website since 2005.

84. GMES has extensively advertised and promoted its website.

85. Defendants willful and complete duplication of the GMES Website from the style and positioning of each creative element to the color combinations of the texts and fonts have resulted in the EVIL Website being an exact replica of the GMES Website.

86. Upon information and belief, Defendants purposefully selected GMES' trade dress for their website design in bad faith to trade off the goodwill of GMES' trade dress.

87. GMES never licensed or otherwise authorized Defendants to use their trade dress.

88. GMES has been damaged by Defendants' misappropriation and unauthorized use of its trade dress.

## COUNT III - UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. §1125(a)

89. GMES incorporates and realleges the allegations of paragraphs 1 through 88 as if fully set forth herein.

90. Defendants use of their copycat website in the conduct of their business is calculated to, has caused, and is likely to continue to cause confusion and deception. The public and the trade is likely to believe that Defendants and/or their goods and services are licensed, sponsored, authorized, approved or are in some other way associated or connected with GMES' business.

11

91. Defendants intentionally developed their website to be confusingly similar to the GMES Website such that it misleads customers to believe that the products sold on the EVIL Website are sponsored, endorsed, or sold by GMES.

92. This is evidenced by the fact that GMES and Defendants operate in the same niche industry and sell the same products.

93. The confusingly similar aspects of the two websites include, without limitation, the overall look of the Defendants' website, which is presented in a style and manner so as to be confusingly similar to the GMES Website, including, without limitation, the color scheme used, fonts, the layout of the website, and the photo features used.

94. As a consequence of Defendants' misuse of the Copyright and trade dress, the public is likely to believe mistakenly, and to be confused into thinking that Defendants and their goods originate with, are affiliated with, or are approved by GMES.

95. Defendants, by reason of their acts set forth above, has made and will continue to make profits to which they are not in equity or good conscience entitled.

96. Defendants' wrongful acts and unauthorized use have and will continue to cause GMES substantial injury, including loss of customers, dilution of its reputation, dilution of its goodwill, confusing of existing and potential customers, loss of reputation and diminution of its intellectual property.

97. By reason of Defendants' intentional and willful infringement of GMES' copyright and trade dress, GMES has been and will continue to be irreparably harmed unless Defendants are preliminarily and permanently enjoined from their unlawful conduct.

98. GMES is entitled to recover from Defendants all damages it has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of Defendants' infringing acts alleged above, in an amount not yet determined.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

99. GMES incorporates and realleges the allegations of paragraphs 1 through 98 as if fully set forth herein.

100. This action is for unlawful appropriation of GMES' exclusive rights in its copyright and trade dress and is against Defendants based on Defendants' unauthorized use of the copyright and trade dress material.

101. As a consequence of Defendants' use of the copyright and trade dress, the public is likely to believe mistakenly, and to be confused into thinking that Defendants and their goods originate with, are affiliated with, or are approved by GMES.

102. Defendants' wrongful acts and unauthorized use have and will continue to cause GMES substantial injury including loss of customers, dilution of its reputation, dilution of its goodwill, confusion of existing and potential customers, loss of reputation, and diminution of its intellectual property. The harm these wrongful acts cause to GMES is both imminent and irreparable, and the amount of damage sustained by GMES will grow ever more difficult to ascertain if these acts continue.

103. Such confusion and mistake has, and will cause irreparable harm to GMES. For example, dissatisfaction with Defendants or their goods or services will mistakenly be attributed to GMES, and any adverse publicity associated with Defendants or their website will reflect negatively upon GMES.

104. Further, given the similarities in the look and feel between the EVIL Website and the GMES Website, customers may arrive at the EVIL Website and believe they are ordering from GMES.

105. This is particularly likely to occur given EVIL and GMES operate in the same niche market.

106. GMES will continue to be irreparably harmed as long as Defendants are allowed to continue to infringe upon GMES' trade dress and copyright material.

## PRAYER FOR RELIEF

WHEREFORE, GMES respectfully requests an order and judgment against Defendants, jointly and severally, providing that:

(a) GMES is the rightful owner of the Copyright;

(b) By copying, reproducing, displaying, using, publishing, distributing and preparing derivative works of the Copyright and GMES' trade dress, Defendants have infringed GMES' exclusive rights in, and to the same and Defendants by its acts have engaged in unfair competition in violation of the Lanham Act and common law;

(c) Defendants are jointly and severally liable to GMES for three times the amount of EVIL's profits or GMES' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. §1117(b), plus prejudgment interest at the maximum rate allowed by law; and

(d) Defendants are jointly and severally liable to GMES for its reasonable attorneys' fees and such other compensatory damages as this Court may determine to be fair and appropriate pursuant to, 15 U.S.C. §1117(a);

(e) Defendants are jointly and severally liable to GMES for GMES' actual damages and any additional profits of the Defendants or statutory damages, in accordance with 17 U.S.C. § 504 and for GMES' costs and attorney fees pursuant to 17 U.S.C. § 505;

(f) All Copyright and derivative works that have been reproduced and copied by Defendants be impounded and returned to GMES;

(g) Defendants and their agents and successors and those acting in concert with them be temporarily, preliminarily, and permanently restrained and enjoined from further use, copying, reproduction, sale, or distribution of any work that is derived from or is a reproduction of GMES' Copyrights or trade dress, or from otherwise engaging in unfair competition in violation of the Lanham Act or common law.

(h) For such other relief as this Court deems proper and just, including an award of all costs and fees incurred by GMES herein.

## DEMAND FOR JURY TRIAL

107. GMES demands a jury trial on all issues so triable.

Dated:  March 14, 2016                    Respectfully submitted,

                                          DENTONS US LLP


                                          By:  /s/ Brian R. McGinley
                                              Brian R. McGinley        MO Bar #46353
                                              Carly Duvall             MO Bar #61925
                                              4520 Main Street, Suite 1100
                                              Kansas City, Missouri 64111
                                              Phone:    816-460-2400
                                              Fax:      816-531-7545
                                              brian.mcginley@dentons.com
                                              carly.duvall@dentons.com

                                          ATTORNEYS FOR PLAINTIFF

15
94261342

Case 2:16-cv-04085-NKL   Document 1   Filed 03/14/16   Page 15 of 15