IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GMES, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:16-cv-04085-NKL |
| LINE OF SIGHT COMMUNICATIONS, INC., d/b/a E.V.I.L. | ) |
| and | ) |
| STEVEN M. WILCOX, | ) |
| Defendants. | ) |

**ORDER**

Defendants Line of Sight Communications, Inc. d/b/a E.V.I.L. ("EVIL") and Steven M. Wilcox request that this action be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion, Doc. 12, is denied.

**I.     Background[1]**

Plaintiff GMES, LLC ("GMES") sells industrial supplies, personal protective equipment, fall protection safety equipment, and lifting and rigging equipment. EVIL sells these same products and has attended and participated in the same trade shows as GMES. Wilcox is the President and owner of EVIL and is responsible for the operation

---

[1] At the motion to dismiss stage, all of Plaintiff's allegations are accepted as true and construed in the light most favorable to the Plaintiff. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

1

and management of EVIL. On May 9, 2016, GMES filed its first amended complaint against Defendants alleging that Defendants infringed its copyright and trade dress and engaged in unfair competition and tortious interference with its business interests by duplicating portions of GMES's website on Defendants' website.

GMES launched its website in 2005. In 2014 and 2015, the website underwent substantial redevelopment and improvement, which cost GMES more than $100,000 and 350 employee hours. Since this update, GMES has obtained a Copyright which protects the text, photograph, and 2-D artwork on the website. This website utilizes the same black background and white, gray and/or red text GMES has utilized since 2005. It is the only company in the industrial climbing industry that utilizes this color scheme. GMES has significantly promoted the website in a variety of forums.

In January 2016, EVIL launched a redesigned website which contains a number of features which are substantially similar to GMES's website. Both websites contain a black banner at the top of the landing page, a gray print background which resembles stone, logos in the top left corner of the landing page, a logo featuring gray text on a black background with red accents, an invitation to speak to an expert next to the logo with similarly colored text, a search bar asking customers "What are you looking for?", a similar color scheme throughout their pages, similar "Shop by Category" drop down menus, similar fonts, similar photo galleries, and a number of other small similarities. Prior to EVIL's January 2016 redesign, the website looked completely different.

GMES's Amended Complaint states five counts: (I) Copyright Infringement, (II) Infringement of Trade Dress Under Lanham Act, 15 U.S.C. § 1051, (III) Unfair

2

Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (IV) Common Law Unfair Competition, and (V) Tortious Interference with Business Interest.

## II. Discussion

Defendants contend that dismissal of this action is proper pursuant to Federal Rule of Civil Procedure 12(b)(6), because GMES has failed to state a claim upon which relief can be granted. At the pleading stage, a plaintiff is not required to present detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### A) Count I: Copyright Infringement

Defendants contend that Count I should be dismissed because GMES has not plead that the specific elements of its website, such as the text and colors, are copyrighted.

To plead a claim for copyright infringement, GMES must allege (1) ownership of a copyright, (2) access by Defendants to the copyrighted materials, and (3) substantial similarity between GMES's copyrighted work and Defendants' work. *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987).

Defendants' contention that GMES has insufficiently alleged which parts of its website are covered by the copyright and which parts are excluded from copyright protection ignores the liberal pleading standard in the Federal Rules. Rule 8(a) requires only that a plaintiff present "a short and plain statement of the claim showing that the
3

pleader is entitled to relief." Requiring GMES to parse through every word and link on its website to identify precisely what it believes is copyright and what it believes is not would necessitate GMES providing much more than a "short and plain statement of the claim." The numerous similarities between the websites identified by GMES in the Complaint satisfy the requirements of Rule 8 and give facial plausibility to the claim. *See Ashcroft*, 556 U.S. 662.

Defendants' remaining argument that GMES's website does not contain sufficiently original content to qualify for copyright protection is premature. Copyright inquiries are often complex and require the Court to determine to what extent a party is duplicating an original factual compilation, rather than individual facts. "Facts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted. A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 350-51 (1991). It is far too early for the Court to determine what elements of GMES's website Defendants may have duplicated and whether those elements constitute generic and publically available components, or the website or some parts constitute factual compilations protected by copyright law. *See Zimmerman Group, Inc. v. Fairmont Foods of Minnesota, Inc.*, 882 F.Supp. 892, 894 (D. Minn. 1994). As GMES has stated a claim for relief which is plausible on its face, Count I will not be dismissed.

**B) Preemption by the Copyright Act**

Defendants contend that Counts II, III, IV, and V should be dismissed because they are preempted or barred by the Copyright Act.

### 1) Lanham Act Claims

"The Copyright Act provides the exclusive source of protection for 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106' of the Copyright Act. *See* 17 U.S.C. § 103(a)." *National Car Rental System, Inc. v. Computer Associates Intern., Inc.*, 991 F.3d 426, 429 (8th Cir. 1993). However, "Section 301(d) of Title 17 states: 'Nothing in this title annuls or limits any right or remedies under any other Federal statute.' Thus, the Copyright Act, by its terms, does not preempt plaintiff's Lanham Act claims." *Tracy v. Skate Key, Inc.*, 697 F.Supp. 748, 751 (S.D.N.Y. 1988).

#### a) Count II: Trade Dress Infringement

"A claim for trade dress infringement requires a showing that the plaintiff's trade dress is protected – i.e. that it identifies the product source either by being inherently distinctive or having secondary meaning – that is not functional, and that the defendant's trade dress is confusingly similar to the plaintiff's from the prospective of consumers." *Salt Optics, Inc. v. Jand, Inc.*, 2011 WL 13055856, at *2 (C.D. Cal. March 4, 2011). The "look and feel" of a website, which is protected by a trade dress claim, is not entitled to protection under the Copyright Act. *Id.*; *see also Darden v. Peters*, 488 F.3d 277, 287-88 (4th Cir. 2007) ("[T]he Copyright Office noted that a website may well contain copyrightable elements, but its formatting and layout is not registerable.").

5

As trade dress cannot be protected the Copyright Act, there can be no "adequate remedy" for infringement of trade dress through a copyright infringement claim and GMES's trade dress infringement claim is not automatically preempted. *Salt Optics, Inc.*, 2011 WL 13055856, at *2. Further factual development could eventually show that the components of the trade dress alleged by GMES actually constitute elements subject to copyright protection; however, it is too early for the Court to determine what overlap exists. *See Blue Nile, Inc. v. Ice.com, Inc.*, 478 F.Supp.2d 1240, 1246 (W.D. Wash. 2007); *Cockburn v. SWS Industries, Inc.*, 2011 WL 2295145, at *8 (W.D. Wash. June 8, 2011); *Creative Co-Op, Inc. v. Elizabeth Lucas Co.*, 2012 WL 761736, at *2 (D. Idaho March 7, 2012). Therefore, GMES's trade dress claim will not be dismissed for preemption at this stage.

### b) Count III: Unfair Competition

The concept of unfair competition under the Lanham Act is not strictly defined, but it "imposes liability for unfair competition upon one who, in connection with the sale of goods, makes a false or misleading misrepresentation of fact that 'is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods….'" *Home Builders Ass'n of Greater St. Louis v. L&L Exhibition Management, Inc.*, 1999 WL 34803788, at *16 (E.D. Mo. Aug. 13, 1999) (quoting 15 U.S.C. § 1125(a)).

> Unfair competition is not an objective "thing" and has no objective reality. It is merely an intellectual concept convenient to describe a process which goes on in courts of law. It is as specious to attempt a

6

>   sweeping, all-inclusive definition of "unfair competition" as to try to
>   define the legal concept "reasonable." The term "unfair
>   competition," as used to describe a generic class of commercial
>   activities, is too abstract and subjective when divorced from concrete
>   examples. . . . [T]he meaning of the term is fluid, having been
>   refined on a case-by-case basis by lawyers and judges.

*Id.* (quoting J. McCarthy, Trademarks & Unfair Competition § 1:3 (2d ed. 1984)).

A myriad of courts have held that unfair competition claims are preempted by the Copyright Act. *See Blue Nile, Inc. v. Ice.com, Inc.*, 478 F.Supp.2d 1240 (W.D. Wash. 2007); *Lacour v. Time Warner, Inc.*, 2000 WL 688946 (N.D. Ill. May 24, 2000); *Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458, 462-63 (S.D.N.Y. 1999). The Court finds these opinions highly persuasive. However, as discussed above, the Court cannot say at this early stage of litigation that GMES's trade dress infringement claim is preempted by the Copyright Act. Therefore, to the extent that the trade dress infringement claim is unique from the copyright infringement claim, it constitutes a potential unique basis for a finding of liability on the unfair competition claim which is separate from the Copyright Act. To the extent that GMES's trade dress infringement claim supports its claim for unfair competition, Count III is not preempted by the Copyright Act.

### 2) State Law Claims

A state cause of action is preempted by the Copyright Act if: (1) the work at issue is within the subject matter of copyright as defined in §§ 102 and 103 of the Copyright Act, and (2) the state law created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106." *National Car Rental System, Inc. v. Computer Associates Intern., Inc.*, 991 F.3d 426, 429 (8th Cir. 1993). If an extra element

7

is required for the state law cause of action, there is no preemption. *Davidson & Associates, Inc. v. Internet Gateway, Inc.*, 334 F.Supp.2d 1164, 1175 (E.D. Mo. 2004); *see also National Car Rental System*, 991 F.3d at 431. However, "'[t]he existence of an extra element precludes preemption only where the element changes the nature, rather than the scope of the action.'" *Dutch Jackson IATG, LLC v. Basketball Marketing Co.*, 846 F.Supp.2d 1044, 1049 (E.D. Mo. 2012) (quoting *Stromback v. New Line Cinema*, 384 F.3d 283, 301 (6th Cir. 2004)).

### a) Count IV: Unfair Competition

A cause of action for unfair competition in Missouri follows the general principles of unfair competition in the Lanham Act. *Home Builders Ass'n of Greater St. Louis v. L&L Exhibition Management, Inc.*, 1999 WL 34803788, at *15 (E.D. Mo. Aug. 13, 1999). For the same reasons discussed above in relation to GMES's Lanham Act unfair competition claim, the Court cannot conclude that the state law claim for unfair competition is preempted by the Copyright Act, to the extent that the claim arises out of GMES's claim for trade dress infringement.

### b) Count V: Tortious Interference

A claim for tortious interference under Missouri law requires that a plaintiff show (1) a valid business expectancy, (2) defendant's knowledge of the relationship, (3) a breach induced or caused by defendant's intentional interference, (4) absence of justification, and (5) damages. *Dutch Jackson IATG, LLC v. Basketball Marketing Co.*, 846 F.Supp.2d 1044, 1050 (E.D. Mo. 2012). Though these elements are distinct from those of a copyright claim, "the rights asserted in [tortious interference] claims are not

8

qualitatively different from the rights protected by copyright." *Stromback v. New Line Cinema*, 384 F.3d 283, 306 (6th Cir. 2004). As such, tortious interference claims are generally found to be preempted by the Copyright Act:

> Insofar as unauthorized reproduction, distribution, performance or display causes the plaintiff to lose the benefits that would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference do not appear to differ qualitatively from rights under copyright; copyright also contemplates loss of actual or prospective contract benefits by reason of such unauthorized acts. Pre-emption in this context would, then, appear to be justified. The fact that the tort, unlike copyright infringement, requires awareness of the conflicting contract and an intentional interference with it merely means that the state-created right is narrower than its copyright counterpart, not that it is qualitatively different so as to preclude pre-emption.

*Id.* at 306-07 (quoting 4 Melville B. Nummer & David Nimmer, Nimmer on Copyright § 1.01(B)(1)(a)); *see also Ray v. ESPN, Inc.*, 783 F.3d 1140, 1145 n.2 (8th Cir. 2015) (positively citing *Stromback*).

While GMES's tortious interference claim is preempted to the extent it relates to the copyright infringement claim, the Court cannot conclude that the claim is entirely preempted for the same reasons the unfair competition claims are not preempted. To the extent that the tortious interference claim relates to the trade dress infringement claim, Count V is not preempted.

### C) Count II: Trade Dress Infringement

Defendants next argue that GMES has failed to plead a cognizable trade infringement claim, which requires allegations that the trade dress is (1) inherently

9

distinctive, (2) non-functional, and (3) the likelihood that consumers will be confused. *Intsy\*Bit, Inc. v. Poly-Tech Industries, Inc.*, 95 F.3d 663, 667 (8th Cir. 1996).

"The trade dress of a product involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132 (8th Cir. 1986) (quotation omitted). GMES has plead that Defendants infringed on its trade dress by copying the "look and feel" of its website, including the colors, layout, design, and other components. This is sufficient to state a claim for trade dress infringement.[2] Defendants' arguments parsing the functionality and originality of the components of the overall design and distinctions between the EVIL website and the GMES website which would prevent customers from being confused about the marketing are all factual arguments irrelevant at the motion to dismiss stage. Count II will not be dismissed.

### D) Counts III and IV: Unfair Competition

Defendants also contend that GMES has failed to plead claims for unfair competition under the Lanham Act and Missouri common law. The Lanham Act defines unfair competition generally as a false representation which is likely to cause confusion as to the origin of goods or services, or a misrepresentation of the nature or characteristics of goods or services. 15 U.S.C. § 1125(a). As discussed above, the Missouri common

---

[2] A discussed above in relation to the copyright infringement claim, Rule 8 does not require GMES to parse through every single element of its website to explain why it is unique and protectable at this point. GMES was not required to identify in the Complaint the "hex triplets" of the colors used on its website or plug-ins used from third party vendors, which are all part of the overall look and feel of the website which GMES claims is being infringed upon.
10

law claim for unfair competition follows the general principles of Lanham Act unfair competition claims. *Home Builders Ass'n of Greater St. Louis v. L&L Exhibition Management, Inc.*, 1999 WL 34803788, at *15 (E.D. Mo. Aug. 13, 1999). Defendants argue that GMES has failed to sufficiently plead that Defendants' actions are calculated to deceive the ordinary buyer.

GMES has sufficiently plead its unfair competition claims. GMES notes that it revamped its website in 2014 and 2015, and that in January 2016 EVIL revised its website to look substantially similar. GMES identified a string of similarities between the two websites, the overlapping customer bases of the companies, and contends that there is a likelihood of confusion for GMES's potential customers. These allegations are sufficient to state claims for unfair competition under Missouri law and the Lanham Act. *See American Traffic Solutions, Inc. v. B&W Sensors, LLC*, 2014 WL 1272509, at *8 (E.D. Mo. March 27, 2014).

### E) Count V: Tortious Interference

Defendants further argue that GMES has failed to plead a claim for tortious interference with business expectancies because it fails to identify any contract or customer or relationship that GMES allegedly lost as a result of Defendants' actions, or that Defendants knew of or intentionally caused the breach of a contract or business relationship between GMES and its customers.[3]

---

[3] The elements of a tortious interference with business expectancy claim under Missouri law are set out *supra* at section II.B.2.b.

11

At this stage, GMES need not present evidence of specific contracts or business relationships which were infringed upon through Defendants' actions. GMES has alleged that its customer base overlaps with that of EVIL, and that Wilcox deliberately marketed the EVIL website to GMES's customers. These allegations are sufficient to state a claim for tortious interference. *See Reynolds v. Diamond Foods & Poultry, Inc.*, 79 S.W.3d 907, 909 (Mo. 2002) (noting that at the motion to dismiss stage, the court "assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive."); *cf Community Title Company v. Roosevelt Federal Savings and Loan Association*, 796 S.W.2d 369 (Mo. 1990) (holding that the evidence of tortious interference was insufficient in a motion for summary judgment).

**F) Motion to Dismiss Defendant Steven Wilcox**

Finally, Defendant Wilcox requests dismissal because GMES has not identified any specific action by Wilcox to impose personal liability on him.

The Eighth Circuit has held that "'[a]n individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity, is personally liable for the infringement.'" *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 834 (8th Cir. 1992) (quoting *Southern Bell Tel. & Tel. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985)). It is therefore clear that Wilcox could be held liable for GMES's claims.

At this point it is unnecessary for GMES to identify what specific actions Wilcox took in order to establish his liability. GMES has plead that Wilcox is the President and

12

owner of EVIL and responsible for its operation and management and that he has the right and ability to supervise EVIL's infringing activity. GMES also stated that Wilcox deliberately marketed the EVIL website to GMES's customers. These allegations are sufficient to prevent dismissal of Wilcox at this point. *Cf. Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (holding that evidence presented at trial was too attenuated to show contributory infringement or vicarious liability).

### III. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is denied.

/s/ Nanette K. Laughrey<br>NANETTE K. LAUGHREY<br>United States District Judge

Dated: June 27, 2016
Jefferson City, Missouri